JOHN CLINE *v*. JOHN N. FALLIS, ET AL.

[Abstract Kentucky Law Reporter, Vol. 1—325.]

**Weighing Evidence in Case of Conflict.**

In case of irreconcilable conflict in the evidence of the parties to an absolute deed claimed to have been a mortgage, the court will take as true the party's evidence which is consistent with the motives that ordinarily control the action of persons alive to their own interests, and will hold as false the party's evidence showing a course pursued which is inconsistent with the motives ordinarily controlling the action of parties to a business transaction.

APPEAL FROM CAMPBELL CHANCERY COURT.

October 20, 1880.

OPINION BY JUDGE COFER:

The sole question in this case is whether there was such an agreement between the appellant and the appellees that they occupy the relation of mortgagee and mortgagors. Upon the face of the deeds and lease the appellant appears to be the absolute owner of the property, and the appellees to have been conditional purchasers. But the appellees claim to have shown that the relation of mortgagors and mortgagee existed.

Fallis testifies that he went to see Cline on the 4th of December, 1872, and that Cline agreed to furnish him the money to pay Timberlake if he (Fallis) would have his wife join in making or consenting to the master commissioner making a deed to the property, with the express understanding that Fallis should have the privilege of redeeming the property at any time as expressed in the lease of the 5th of December.

Cline says no such interview ever took place, and says, moreover, that he never saw Fallis until the next day when he was introduced to him in Smalley's office, and Smalley testifies that he introduced Fallis to Cline at the former's request. Cline also says he never had any agreement with Fallis and wife. When asked how he came to make the lease he answered that Smalley, who was acting for Fallis and wife, made the proposition to him to give a lease to them, which he agreed to do, and the terms were satisfactory, and that the reason he gave the lease was that they offered him a good rent. But he nowhere states how he came to give them the privilege of purchasing as expressed in the lease, and as he disclaims having made any agreement at all with Fallis and wife the inference from his statement is that he agreed with Smalley to make the lease, and that he also agreed with him in regard to the privilege to purchase, though he does not in terms say so.

Smalley, when questioned on this subject, says Fallis called upon him before the contract with Timberlake was completed, and desired, in case Cline took the property, that some arrangement be made with him by which they (Fallis and wife) could occupy the house for an agreed rent; that he made inquiry of Cline, who said he was willing they should have it if they could agree on the rent to be paid; that the next he knew of the matter of rent Hawkins and Fallis showed

him a lease that Hawkins had written, containing the same stipulations as are contained in the lease that was executed; that he showed the lease to Cline, who said if they were willing and desired to rent on the terms stipulated in the lease, they could have it. He also says he copied the lease as written by Hawkins, and the copy made by him we infer was the paper that was finally signed as showing the terms of the lease.

Neither Cline nor Smalley speaks of any negotiations between them concerning the stipulations in regard to the repurchase of the property; nor does Smalley nor any one else speak of a desire on the part of Fallis and wife, or of Cline, that any such stipulations should be inserted. Aside from the testimony of Fallis, there is not a word in the evidence to show how these stipulations came to be inserted. The evidence shows that Cline regarded the property as cheap at the price he was paying Timberlake for it; he says he dealt only with Timberlake, that he had nothing whatever to do with Fallis and wife, and does not attempt to account in any way for the extraordinary manner in which he dealt with them when he came to make the lease.

According to his account and his theory of the case, he was under no obligations to give such terms, and was only renting to them because they agreed to pay a good rent. He was the absolute owner under his purchase from Timberlake of property worth more than he agreed to pay for it, and which he had purchased because it was cheaper; and without any obligation to do so he gives Fallis and wife the option to purchase the property at any time in two years at the price he had paid for it in cash. It also appears, if his theory is right, that Fallis and wife caused a lease to be written embracing the privilege to purchase, and sent it to him without a word of previous negotiation with him upon that subject, and he consented to execute the lease without a word of comment or of subsequent negotiation; for it nowhere appears, except in Fallis' testimony, that one word had passed between Cline and Fallis and wife, or between Cline and Smalley, as their agent, about the purchase until the written lease giving that privilege.was presented to him by Smalley. Men do not usually so act without some obligation to do so.

At the time Cline agreed with Timberlake the sale had not been confirmed; nor had it been confirmed prior to the day on which the deed from Fallis and wife to Cline and the lease to them were executed. The property had been sold for one-fourth the original pur-

chase money, and it was natural that they should be seeking some one to make them a loan. The security was ample, and the obligation imposed upon them by the lease was a large interest on the investment, and offered just such an opportunity as one having money to loan would be likely to embrace. Unless Fallis and wife were in some way interested in securing the execution of the contract between Cline and Timberlake, it is difficult to understand why they should put themselves to the trouble to make a deed in order to make sure that Cline should acquire an undoubted title. It is not claimed that they executed the deed in order to secure the privilege of repurchasing. According to Cline's theory he was under no obligation to allow them that privilege. He did that without obligation or motive, and without ever having been asked to do so until the lease containing these stipulations was handed to him by Smalley.

We think the far more reasonable conclusion is that the facts are as stated by Fallis. His statement is consistent with the conduct of the parties, and is under the circumstances the more reasonable. The readiness with which Cline appears, from Smalley's statement, to have assented to the terms of the lease, shows that he had heard of them before. He does not appear to have heard of them previously from Smalley, for neither of them speak of any such terms ever having been discussed between them. If Fallis' statement be true the conduct of all the parties is consistent with the motives that ordinarily control the action of persons alive to their own interests.

Upon the opposite theory the conduct of all the parties is different from what might have been expected under the circumstances. Fallis and wife were not likely to make a deed in which they had no interest, from which they were to derive no benefit, and which they were under no obligation, legal or moral, to make; and on the other hand it is quite as unlikely that Cline would have made the stipulations contained in the lease if, as he claims, he had no dealings with them, and was therefore under no obligation to do so. We, therefore, after a careful examination of all the evidence, conclude that the agreement testified to by Fallis was made, and that he, at least, and Mrs. Fallis' property, or what had been and was her property when the agreement was made, became liable to reimburse the money paid for them to Timberlake, and that the relation of debtor and creditor was thus established, and the deeds and lease were properly held, on the oral evidence, to operate as a mortgage.

The counterclaim set up in the amended petition was not germane

to the original petition, and the order requiring the appellees to elect was proper. Nor was there any error in refusing a credit for the note or due bill of Fallis which is unpaid. The appellees come in to ask the aid of a court of equity, and they must do equity. They cannot ask equity for themselves, and in the same matter ask to have strict law, and doubtful law at that, applied to their adversary.

Judgment *affirmed* on original and cross-appeal.

*F. M. Webster, William Lindsay, for appellant.*

*J. R. Hallam, for appellees.*